## ARTHUR A. WELLS and JOHN STUART v. JOHN ROCK.

High Court of Errors and Appeals.   June, 1818.

*Ridgely's Notebook II, 96.*

[*Read* for plaintiff in error.   *Vandyke* for defendant in error.]

A trial was had at April [Term], 1814.   The facts were as follows:

In the year 1803, E. Britton leased a farm in that county to John Stuart for the term of eight years from March 25, 1803, and expressly stipulated in the lease that Stuart, his heirs, or assigns, should have the right to leave one-half of the ground in grain at the expiration of the term of eight years for his or their own use.  Stuart entered, and on March 11, 1809, under-leased to William Giberson the said farm for two years from March 25 of that year, rendering rent in kind, *viz*, "250 bushels of clean corn, 250 bushels of oats, and 150 bushels of wheat, the said Giberson to deliver the grain at Augustine, or at any other place more suitable to the said Stuart, at the following seasons, *viz,* the oats at any time that shall or may be most convenient for the said Stuart to receive them through the interval from the time they are cut, or harvest, until March 25, in the first year of the said term;  and in like manner, the second and last years thereof—the wheat to be delivered as above said, the first crop at any time of notification by the said Stuart after the harvest thereof until March 25 in the second and last year, and the second or last crop of said wheat in like manner in the year following the expiration of said term."   Before March 25, 1811, C. Vandegrift

bought the farm of Britton, subject to the encumbrance of his lease to Stuart, and leased it to John Rock, the plaintiff, to commence on March 25, 1811.

In the Fall of 1810, Giberson hired Rock to put in the crop of wheat to pay Stuart's rent, and moved off the farm and died in the winter. After the wheat was cut, Stuart entered on the field where it grew, and with his bailiff distrained upon the wheat, taking with him but three freeholders, and distraining only the wheat in stack, no other being then to be found, which did not amount to more than one hundred bushels. The next day, finding that the Act of Assembly [4 Del.Laws 263], required five freeholders in a distress for rent in kind, he entered again, and completed the distress, laying it upon the same stack and several bags which had been taken to Rock's house. Both parcels did not amount to the rent. For this proceeding Rock brought his action of trespass. . . .

The judges declared their opinion to the jury that there were three several distinct views in which this case might be considered, involving three points or questions of law:

"First. Supposing John Stuart was a lessee for years holding an interest in the land under Ezekiel Britton, and his term continued in him or his under-tenant, William Giberson, until March 25, 1811, and that according to his lease to Giberson there were 150 bushels of wheat due to him from Giberson on July 15, 1811, then the question was, whether, under the lease from Stuart to Giberson, Stuart had a right, on July 15, 1811, to distrain for rent. You will see by the terms of that lease Giberson contracted to deliver the wheat after harvest, as per lease, upon notification to Stuart. Stuart, we are of opinion, was bound to give notice of the time of delivery, and until he did give notice, he had no right to distrain. And if he had no right to distrain, his entry was unlawful and a trespass. If we are right, this opinion settles the question, and Stuart is a trespasser.

"Second. Supposing from the facts of the case that the terms of the contract between Giberson and Stuart were such that on July 15, 1811, 150 bushels of wheat were due and in arrear to John Stuart, the next question is, had John Stuart a right by law to distrain. This depends on the Act of Assembly [2 Del.Laws 1155], which has been read, the design of which was to give landlords a remedy which they did not possess before. It gives the landlord a right to distrain after the determination of his lease to tenant, which he could not before have done. The remedy is broad but is expressly restrained by the proviso. The question is, had John Stuart such title or interest as the lease requires. The

Court are decidedly of opinion he had no legal right to levy a distress after the expiration of his own lease.

"Third. Supposing the Court mistaken on both the other points, and admitting that Stuart had a right to distrain and had such an interest as the Act of Assembly contemplates, and that he made a distress, and plaintiff replevied, and that notwithstanding this he made another distress, the Court think the second distress of the same property for the same rent was illegal. Landlord has no right to distrain a second time on the same property for the same rent.[1]

"We do not touch the facts; you are to say whether they are so. If the plaintiff is entitled to a verdict, what should be the damages? That subject belongs entirely to you. If the plaintiff be injured, he ought to have a reasonable compensation, but no more. . . ."[2]

[Verdict for plaintiff below, defendant in error.]

---

THE CHANCELLOR. Ezekiel Britton, the tenant in fee of the land on which the distress was made on the 12th February, 1813, demised the same to Stuart, his executors, administrators or assigns, for a term of eight years from the 25th day of March in the same year, paying a rent of £60 a year, except the first year,

---

[1] Note by Ridgely, "Regularly at common law when there is an entire duty or rent due, a man should distrain for the whole at once, and not for part at one time and part at another, for that would be oppressive and illegal. Moo. 7, pl. 26, 1 Burr. 589, 2 Lut. 1532, *Wallis v. Lavil;* and therefore if he distrains a second time for the same thing, he ought to show that at the time of taking the first distress there was not sufficient on the premises, or that he had mistaken the value, and that the first distress was only of such a value, otherwise the second distress will be bad. 2 Lut. 1532, 1 Burr. 589. But by Statute, 17, Car. II, s. 4, when the value of the cattle distrained shall not be found by the jury to be to the full value of the arrears distrained for the party to whom such arrears were due, his executors or administrators may from time to time distrain again for the residue of the arrears. But where the avowry states only part of the rent to be in arrears, and avows the taking for such part, it is bad unless it shows likewise that the residue was satisfied. Cro. Car. 103, 104, *Holt v. Sambach,* Hutt. 96, same case; 4 Mod. 402, *Hunt v. Braines;* 12 Mod. 84, *Johnson v. Baynes.* Just like debt for rent or any other duty, if the declaration is for part of the rent or duty, it is bad, unless it also shows that the residue was satisfied. 20 Edw. IV, [c.] 2, pl. 6, Bro.Ent.,[title] 'Avowry,' 102; Cro. Car. 137, *Bayly v. Offord;* Cro.Jac. 498; 4 Mod. 402; Gilb. Dist. (2d ed.) 145; 12 Mod. 84; 2 Lev. 4. This note is copied from 1 Saund. 201, a, the note at the end of *Morenson v. Redshaw.* See cases collected as to a second distress in 3 Com. Dig. 551, [title] 'Distress' (Al)."

[2] At this point, *Ridgely's Notebook, II, 101,* the account of this case is interrupted; it is resumed at *114.*

for which he was to pay £50 in advance. Before Stuart's term expired, Britton sold the land in fee to Christopher Vandegrift. On March 11, 1809, Stuart demised the premises to William Giberson for two years from March 25, 1809, Giberson paying a rent in certain quantities of Indian corn, oats, and wheat, to be delivered at Augustine, or at any other place not exceeding the distance of Augustine storehouse from the premises, and to be delivered within certain limited periods, upon notice given by Stuart to Giberson of the times of delivery. On March 25, 1811, at the expiration of the lease made by Britton to Stuart, the land was delivered to Vandegrift, and he let it to Rock, the defendant in error, and Rock went into the immediate possession of it. On July 12, 1811, Wells, one of the plaintiffs in error, as bailiff of Stuart, distrained on wheat which was sowed on the premises in the Autumn of 1810 and cut in July. This was the way-going crop. On July 15, owing to some mistake in the first distress, a second distress was made. The wheat was standing in stack on the place or field where it had grown, or in the barn-yard, or on some part of the premises demised by Stuart to Giberson, except a small parcel in bags which had been carried into the dwelling-house.

The question now is whether Rock can support this action of trespass *quare clausum fregit*. If Stuart had a right to enter on the premises for the purpose of distraining on wheat which was sowed the last year of Giberson's term, Rock cannot support his action. The whole depends on the right of Stuart to distrain. The Act of Assembly for the better regulating distresses for rent and for other purposes therein mentioned, 2 Del.Laws 1147, s. 13, has been relied on by the plaintiff in error as fully justifying Stuart's entry and distress. But that Act is no authority for this distress, because Stuart, in his lease to Giberson, parted with his whole estate or interest in the land and reserved no reversion; and consequently had no right at any time to distrain, even for the first year's rent. I refer to 2 Bac.Abr. 106, title, "Distress," and to the authorities there cited. It is there said that if a lessor reserve not the reversion, he cannot distrain of common right, but he may reserve to himself a power of distraining; or the reservation may be good to bind the lessee by way of contract, for the performance whereof the lessor shall have an action of debt. There are some cases in which the law gives a remedy by distress without any provision of the parties, although he who has the right to distrain has no reversion: as for rent granted for equality of partition by one parcener to another; so for rent granted to widow out of lands whereof she is dowable, in lieu of her dower; and also for rent granted in lieu of land upon ex-

change. But the reason of the law in these cases is very different from the case of a lease and no reversion reserved. And it is explicit and clear that if a termor grants all his term rendering rent, he cannot distrain for it. 2 Bac.Abr. 106, Cro.Jac. 487, 2 Lev. 80, Str. 405, 1 Term 441, 2 Wils. 376.

The Act of Assembly never designed to give a right of distress to one who never had such right. It was designed merely to continue, after a determination of a lease, a right to distrain which previously existed; therefore as Stuart never had a right to distrain on Giberson, the Act gave none and could not preserve or continue what the party never had. If then Stuart had no right to distrain, he certainly had no right to enter the close of Rock, and consequently was a trespasser.

As to the questions relating to notice and the second distress it is not necessary to decide nor to intimate any opinion concerning them; for if Stuart had no right to distrain, on the grounds mentioned, the two other questions could have no influence in the cause.

BOOTH, Chief Justice of the Court of Common Pleas, WARNER and COOPER, Justices of the same court, and PAYNTER, Justice of the Supreme Court, who was not a judge at the time of trial in the court below, concurred.

Judgment affirmed unanimously.